IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

TONYA S. MILLS,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )    Case No. 06-3116-CV-S-NKL-SSA
                                   )
JO ANNE B. BARNHART,               )
COMMISSIONER OF                    )
SOCIAL SECURITY,                   )
                                   )
          Defendant.               )

**ORDER**

Tonya S. Mills ("Mills" or "Plaintiff") seeks judicial review of the

Commissioner's denial of her requests for disability insurance benefits under Title II of

the Act, 42 U.S.C. §§ 401, et seq. (Tr. 477-79), and for supplemental security income

(SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq.

(Tr. 1115-18).  The complete facts and arguments are presented in the parties' briefs and

will be duplicated here only to the extent necessary.[1]  Because the Court finds that the

Administrative Law Judge's decision was supported by substantial evidence in the record

as a whole, the Court denies Mills's Motion for Summary Judgment [Doc. # 7] and

affirms the ALJ's decision.

---

[1] Upon review of the record and the law, the Court finds the Defendant's position persuasive.
Portions of the Defendant's brief are adopted without designated quotations.

1

## I.    Background

### A.    Medical Records

On December 13, 1999, Mills saw Jon P. Cox, M.D., for an OMNI Internal
Medicine Medical Evaluation.  She reported suffering from fatigue and a headache.
Physical examination revealed that she was moderately overweight.  She was diagnosed
with generalized fatigue probably due to chronic pain, light-headedness, an upper
respiratory infection and chronic neck pain.  (Tr. at 212.)

On March 30, 2001, Mills reported back to Dr. Cox with right flank/back pain.
She reported that the pain was a dull aching discomfort.  Physical examination revealed
some mild CVA tenderness on the right.  She was diagnosed with flank pain.  (Tr. at
205.)  On April 12, 2002, Mills called Dr. Cox's office and noted that her neck was very
painful and she was not getting through the day.  She was told to start taking Vioxx.  (Tr.
at 238.)  On April 25, 2002, Plaintiff called Dr. Cox's office and reported that she was
having "horrible" neck pain and needed stronger pain medication.  (Tr. 237.)

On April 26, 2002, Plaintiff saw C. Scott Anthony, D.O., for an initial evaluation.
(Tr. 146.)  She reported a previous magnetic resonance imaging (MRI) which had been
normal.  (Tr. 146.)  Plaintiff denied significant numbness, tingling, and extremity pain.
(Tr. 146.)  Dr. Anthony noted Plaintiff's headaches, but stated that they were "not of a
migrainous component."  (Tr. 146.)  Examination showed tenderness to palpation of the
cervical paravertebral muscles, but shoulder range of motion was "fairly normal."  (Tr.
147.)  Cervical range of motion was diminished, but neurological examination was intact

2

with symmetrical reflexes, good strength, and no detectable sensory loss.  (Tr. 147.)  Dr. Anthony's impression was longstanding cervicothoracic myofascial pain syndrome.  (Tr. 147.)  He opined that there could be some underlying degenerative disc disease, "but certainly, no radicular component."  (Tr. 147.)  She was placed on Bextra. (Tr. at 147.)  He recommended trigger point injections, which Mills underwent on May 1, 2002, and May 29, 2002.  (Tr. at 145; Tr. at 144.)

On May 29, 2002, Dr. Anthony noted that Plaintiff was "markedly improved" on the left with some degree of pain remaining on the right after recent trigger point injections.  (Tr. 144.)  No limitations were indicated and Plaintiff was directed to begin physical therapy for range of motion and strengthening exercises.  (Tr. 144.)  On July 8, 2002, Dr. Anthony stated that Plaintiff was doing "reasonably well" regarding her cervical thoracic myofascial pain.  (Tr. 143.)  On July 15, 2002, Dr. Anthony performed a repeat trigger point injection.  (Tr. 142.)  He noted that Plaintiff had "been doing very well" and that her pain was "markedly improved."  (Tr. 142.)  No limitations were assessed by Dr. Anthony.  (Tr. 142.)

On July 8, 2002, Mills returned for a follow up examination.  She reported that she was doing reasonably well and that her symptoms were improved following aggressive therapy with trigger point injections.  Dr. Anthony opined that Mills suffered from cervical thoracic myofascial pain.  She was placed on Relafen.  (Tr. at 143.)

Plaintiff underwent a consultative examination by Angelo Dalessandro, D.O., on February 12, 2003.  (Tr. 243-45.)  Examination was unremarkable except for cervical

3

tenderness and decreased range of motion. (Tr. 244.) There was some reported tenderness in the right anterior shoulder joints, but range of motion was normal. (Tr. 244.) There was reported tenderness in the upper dorsal and lumbodorsal areas, but straight leg raising was negative. (Tr. 244.) Neurological examination was normal. (Tr. 244.) Dr. Dalessandro stated that Plaintiff's gait was normal as to speed, stability, and safety. (Tr. 245.) He noted that Plaintiff's dexterity of gross and fine manipulation was present, and that her grip strength was 20 kg bilaterally. (Tr. 245.)

On December 22, 2003, Mills underwent a Comprehensive Internal Medicine Examination with Gary Lee, M.D. Dr. Lee reviewed Plaintiff's prior medical records. (Tr. 148.) Physical examination revealed diminished range of motion in the neck and back. (Tr. at 149.) Upper and lower extremities had normal range of motion. (Tr. 149.) Neurological examination revealed normal sensation, reflexes, and strength, and Plaintiff was able to heel and toe walk. (Tr. 149.) Dr. Lee also noted that Mills suffered from pain in the cervical and lumbar spine causing low back and cervical range of motion loss. (Tr. at 150).

In a May 23, 2005, letter, Dr. Cox reported that Mills had been under his care since 1999. He also reported that she suffered from pain in the posterior aspect of her neck. She occasionally had right arm numbness and weakness. He noted that she also suffered from frequent muscle stiffness and decreased range of motion in the neck and right upper extremity. He noted that Mills suffered from episodic migraine headaches which were disabling. He opined that Mills was limited to sitting for no more than thirty minutes at a

4

time and that she would require frequent position changes every twenty to thirty minutes. Moreover, he opined that she was not able to perform any kind of repetitive motion involving working overhead or lifting. (Tr. at 250.)

### B. Hearing Testimony

Mills testified before the ALJ at a May 24, 2005, hearing in Tulsa, Oklahoma. She stated that she stopped working because she had pain in her legs. (Tr. at 35.) The trigger point injections that she received were only helpful for a short period of time. (Tr. at 36.) She has problems sitting down, driving, standing and walking. She also loses focus and concentration and needs to lie down. The pain occurs in her neck and upper shoulder blades. (Tr. at 37.) The pain in her neck radiates over the back of her head to her eyebrows. She has headaches as a result. She has headaches two times a month that last 24 to 36 hours at a time. (Tr. at 38.) She has to lie down in a dark place to relieve the pain. (Tr. at 38-39.)

Mills testified that she is not able to reach overhead. She suffers from numbness in the morning and an inability to grip anything when she is awake. (Tr. at 40.) She has to alternate positions every ten minutes. (Tr. at 40-41.) She is able to stand for about ten minutes, but must then lie down for forty-five minutes. (Tr. at 41.) Bending and squatting aggravates the pain. (Tr. at 41-42.). She is able to lift a gallon of milk. (Tr. at 42.) She has difficulty staying asleep. (Tr. at 42.) Mills testified that she is able to walk one half a block at a time. (Tr. at 48.) If she had to climb a flight of stairs, she would have pain afterwards and would not be able to go back down the stairs. (Tr. at 49.)

Case 6:06-cv-03116-NKL   Document 10   Filed 10/16/06   Page 5 of 13

Mills testified that she cared for her three children in the home, who were ages 11, 9, and 6 at the time of the hearing. (Tr. 32, 48.) She testified that she was able to do laundry, cook meals, and wash dishes. (Tr. 41-43, 45, 48.) She was able to drive short distances and watch television. (Tr. 44-45.) She attended school functions for her children. (Tr. 46.)

The ALJ also heard testimony from a Vocational Expert who testified that a person with Mills's education who could occasionally lift twenty pounds, who could frequently lift ten pounds, who could stand and/or walk with normal breaks six hours in an eight hour day, who would be unlimited in pushing and pulling, and who could occasionally stoop would be able to perform all past relevant work. (Tr. at 54.) However, the VE testified that if the same person also needed to change position every twenty to thirty minutes, could not sit for more than thirty minutes at a time, and could not perform any kind of repetitive motion involving working overhead or lifting, then the person would not be able to perform any jobs. (Tr. at 56.)

The VE also testified that two to three headaches a month that last 24 to 36 hours at a time would eliminate competitive work. (Tr. at 57.)

## II.    Discussion

The controlling questions in this case are:

Did the ALJ properly assess Plaintiff's credibility and properly consider the opinion of Plaintiff's treating doctor, John Cox, M.D.?

Did the ALJ properly formulate Plaintiff's residual functional capacity (RFC) and properly find that Plaintiff could perform her past relevant work as an accountant, receptionist, and retail sales clerk?

6

After consideration of the record, the ALJ found that Plaintiff had chronic neck pain (Tr. 20) but did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. The ALJ further found that Plaintiff's impairments would not preclude her from performing her former work. (Tr. 22.) Consequently, the ALJ found Plaintiff was not disabled. Substantial evidence supports that finding.

**A.    The ALJ Properly Assessed Plaintiff's Credibility and Properly Considered the Opinions Stated by Plaintiff's Treating Physician, Dr. Cox**

The ALJ made a proper credibility determination in this case. Prior to rejecting a claimant's subjective complaints, the ALJ is required to make an express credibility determination explaining why he does not fully credit the claimant's complaints. *See Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole. *See Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996); *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996). "If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." *Hogan v. Apfel,* 239 F.3d 958, 962 (8th Cir. 2001), quoting *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir.1990).

In this case, the ALJ explicitly discredited Plaintiff's subjective complaints and the record supports that finding. After considering the objective medical evidence, the ALJ believed that Plaintiff was exaggerating her pain complaints. (Tr. 22.) An ALJ may

7

properly consider a claimant's exaggeration of his symptoms in evaluating his subjective complaints. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997); *Jenkins v. Bowen*, 861 F.2d 1083, 1086 (8th Cir. 1988). For example, although Plaintiff complained of debilitating pain, treatment records from Dr. Anthony showed that trigger point injections in July 2002 "markedly improved" her pain. (Tr. 20, 142.) In December 2003, despite taking multiple prescription medications for pain, Plaintiff told Dr. Lee that she continued to have cervical and thoracic pain that radiated into her head, down her back, and into her right arm. (Tr. 20, 148.) Despite her allegations of pain, Plaintiff demonstrated a normal gait and normal range of motion in her right shoulder, elbow, and wrist. (Tr. 20, 149.) Additionally, although Plaintiff complained of episodic migraine headaches, she did not take medication for this alleged impairment and was not diagnosed with migraine headaches until May 2005. (Tr. 21, 250.) Although Plaintiff testified that she could not grip anything with her right hand and had difficulty writing (Tr. 40), examination consistently revealed normal strength and bilateral grip strength of 20 kg. (Tr. 149, 245.) In addition, Dr. Dalessandro specifically noted that Plaintiff's gross and fine dexterity were present. (Tr. 245.) The objective medical evidence did not support the degree of pain alleged by Plaintiff.

The ALJ also noted that Plaintiff's daily activities were inconsistent with her allegations of disabling pain. (Tr. 22.) "Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir.1987)).

8

The evidence showed that Plaintiff cared for her three children in the home, who were ages 11, 9, and 6 at the time of the hearing. (Tr. 22, 32, 48.) There was also evidence that Plaintiff was able to do laundry, cook meals, and wash dishes. (Tr. 22, 41-43, 45, 48.) She was able to drive short distances and watched television. (Tr. 44-45.) She attended school functions for her children. (Tr. 46.) Plaintiff's activities were a proper factor for the ALJ to consider in his credibility analysis. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000)). *See also* 20 C.F.R §§ 404.1529(c)(3)(I), 416.929(c)(3)(I).

Plaintiff argues that the ALJ should have given controlling weight to the opinions of Dr. Cox. An ALJ is warranted in discrediting the treating physician's opinions which are inconsistent with other evidence in the record. *See Weber v. Apfel*, 164 F.3d 431 (8th Cir. 1999). The ALJ stated that he did not believe Dr. Cox's opinion that Plaintiff was disabled by headaches because he did not prescribe, and Plaintiff did not take, prescription medication for these allegedly disabling headaches. (Tr. 22.) On May 23, 2005, Dr. Cox wrote a letter which stated, among other things, that Plaintiff had "episodic migraine headaches, that can be quite disabling. These typically last for 24 hrs at a time and require her to lay down in a dark and quiet environment, as well as take medication." (Tr. 250.) He further stated that, due to muscle stiffness and "constant" pain, Plaintiff could sit for no more that 30 minutes at a time, required frequent position changes at approximately 20 to 30 minute intervals, and that Plaintiff could not perform any kind of repetitive motion involving overhead reaching or lifting. (Tr. 250.)

However, Dr. Cox's treatment notes during the relevant time period do not provide adequate support for his stated opinions. (Tr. 199, 233-42.) Specifically, Plaintiff saw Dr. Cox on April 7, 2005, with no complaints other than a sore throat. (Tr. 199.) Dr. Cox specifically noted that Plaintiff did not report a headache. (Tr. 199.) On July 30, 2002, a prescription was called in for Plaintiff for a sinus infection. (Tr. 236.) On April 25, 2002, Plaintiff called Dr. Cox's office and reported that she was having "horrible" neck pain and needed stronger pain medication. (Tr. 237.) The only other entry which noted neck pain is dated April 12, 2002, wherein Plaintiff called Dr. Cox's office and complained that her neck was "very painful" and that she was having trouble getting through the day. (Tr. 238.) Plaintiff did not see Dr. Cox on either of these occasions, and the only action taken was that prescriptions were called in to Plaintiff's pharmacy. (Tr. 237-38.) There is no indication that Dr. Cox performed any range of motion or strength testing, and there is no mention of Plaintiff having migraine headaches other than the May 2005 letter discussed above. It appears that Dr. Cox based his opinions primarily on Plaintiff's subjective complaints to him. *In Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993), the court held that an ALJ was justified in discrediting the opinion of a treating physician when it was based solely on the claimant's subjective complaints and was not supported by his other findings.

In addition, other medical evidence of record is at odds with Dr. Cox's conclusion. For example, on April 26, 2002, Plaintiff saw Dr. Anthony for an initial evaluation. (Tr. 146.) She reported a previous magnetic resonance imaging (MRI) which had been

10

normal. (Tr. 146.) Plaintiff denied significant numbness, tingling, and extremity pain. (Tr. 146.) Dr. Anthony noted Plaintiff's headaches, but stated that they were "not of a migrainous component." (Tr. 146.) Examination showed tenderness to palpation of the cervical paravertebral muscles, but shoulder range of motion was "fairly normal." (Tr. 147.) Cervical range of motion was diminished, but neurological examination was intact with symmetrical reflexes, good strength, and no detectable sensory loss. (Tr. 147.) Dr. Anthony's impression was longstanding cervicothoracic myofascial pain syndrome. (Tr. 147.) He opined that there could be some underlying degenerative disc disease, "but certainly, no radicular component." (Tr. 147.) On May 29, 2002, Dr. Anthony noted that Plaintiff was "markedly improved" on the left with some degree of pain remaining on the right. (Tr. 144.) No limitations were indicated and Plaintiff was directed to begin physical therapy for range of motion and strengthening exercises. (Tr. 144.) On July 8, 2002, Dr. Anthony stated that Plaintiff was doing "reasonably well" regarding her cervical thoracic myofascial pain. (Tr. 143.) On July 15, 2002, Dr. Anthony performed a repeat trigger point injection. (Tr. 142.) He noted that Plaintiff had "been doing very well" and that her pain was "markedly improved." (Tr. 142.) No limitations were assessed by Dr. Anthony. (Tr. 142.)

Plaintiff was also examined by Dr. Lee on December 22, 2003. (Tr. 148-50). Dr. Lee reviewed Plaintiff's prior medical records. (Tr. 148.) On examination Dr. Lee noted diminished spine and neck range of motion with tenderness. (Tr. 149.) Upper and lower extremities had normal range of motion. (Tr. 149.) Neurological examination revealed

11

normal sensation, reflexes, and strength, and Plaintiff was able to heel and toe walk. (Tr. 149.) Dr. Lee's impression was cervical and lumbar pain causing low back and cervical range of motion loss. (Tr. 150.) Finally, Plaintiff underwent a consultative examination by Dr. Dalessandro on February 12, 2003. (Tr. 243-45.) Examination was unremarkable except for cervical tenderness and decreased range of motion. (Tr. 244.) There was some reported tenderness in the right anterior shoulder joints, but range of motion was normal. (Tr. 244.) There was reported tenderness in the upper dorsal and lumbodorsal areas, but straight leg raising was negative. (Tr. 244.) Neurological examination was normal. (Tr. 244.) Dr. Dalessandro stated that Plaintiff's gait was normal. (Tr. 245.) He noted that Plaintiff's dexterity of gross and fine manipulation was present, and that her grip strength was 20 kg bilaterally. (Tr. 245.) No limitations were assessed.

The medical record, as well as the record as a whole, during the time period at issue, does not support Plaintiff's subjective complaints or Dr. Cox's conclusions.

**B.** **The ALJ Properly Assessed Plaintiff's RFC and Properly Found that Plaintiff Could Perform Her Past Relevant Work**

Plaintiff argues that the ALJ's RFC assessment was improper. "An ALJ bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995)). The Eighth Circuit has noted that the evidence relevant to a RFC determination includes the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson*, 51 F.3d at 779). In this case, the ALJ

properly considered all of the evidence of record to determine Plaintiff's RFC. The ALJ

concluded that Plaintiff had the RFC to "lift/carry 20 pounds occasionally or 10 pounds

frequently. She can stand/walk or sit for 6 hours during an 8-hour workday with normal

breaks. She is limited to occasional stooping but can push/pull without limit. The

claimant has no mental impairments." (Tr. 22.) As previously discussed, the medical

evidence of record does not support a finding of greater restrictions. Other than the

limitations imposed by Dr. Cox, which the ALJ properly discredited, there are no

notations in the record limiting Plaintiff's physical activity.

## III.    Conclusion

A review of the ALJ's decision on the record as a whole reveals that it is supported

by substantial evidence. Accordingly, it is hereby

ORDERED that Mills's Motion for Summary Judgment [Doc. # 7] is DENIED.

The decision of the Commissioner is AFFIRMED.

 s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: October 16, 2006
Jefferson City, Missouri

13